UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

IN RE: AUTOMOTIVE PARTS
ANTITRUST LITIGATION           MASTER FILE NO. 12-md-02311

_____

In Re: Bearings           HON. MARIANNE O. BATTANI

_____

THIS DOCUMENT RELATES TO:

State of Florida, Office of the
Attorney General, Department of
Legal Affairs           2:13-cv-00505

_____/

**OPINION AND ORDER DENYING DEFENDANTS' COLLECTIVE
MOTION TO DISMISS STATE LAW CLAIMS FROM FLORIDA'S
COMPLAINT FOR DAMAGES, CIVIL PENALTIES, AND INJUNCTIVE RELIEF**

Before the Court is Defendants' Collective Motion to Dismiss the State Law Claims from Florida's Complaint for Damages, Civil Penalties, and Injunctive Relief (Doc. No. 40). Defendant Movants include JTEKT Corporation, JTEKT North America Corporation, NTN Corporation, NTN USA Corporation, NSK Ltd., NSK Americas, Inc., Schaeffler AG, Schaeffler Group USA Inc., AB SKF, [rework if dismissals for lack of personal jurisdiction] and SKF USA, Inc. The Court has [reviewed all of the filings or heard oral argument], and for the reasons that follow, the motion is **DENIED**.

I. INTRODUCTION AND SUMMARY OF FACTUAL ALLEGATIONS

In February 2012, the United States Judicial Panel on Multidistrict Litigation ("Judicial Panel" or "Panel") transferred actions sharing "factual questions arising out of an alleged conspiracy to inflate, fix, raise, maintain, or artificially stabilize prices of automotive wire harness systems" to the Eastern District of Michigan. (12-md-02311, Doc. No. 2). In June 2012, the litigation was expanded to include alleged conspiracies to fix the prices of additional component parts, including Bearings, which is the component part at issue here. The Court already has addressed motions to dismiss filed by three plaintiff classes in the Bearings cases, and because the factual allegations advanced by Florida are substantially similar, the allegations are merely summarized below.

On May 27, 2014, the Office of the Attorney General for the State of Florida filed this class action against Defendants under federal and state law based on Defendants' alleged conspiracy to fix prices and allocate the market for automotive Bearings from January 1, 2000 to the present. (Case No. 14-12095, Doc. No. 1, Compl. at ¶¶ 1, 3, 7). Defendants, some of the largest producers of bearings, hold a majority of the global market share. (Id. at ¶ 59). Defendants manufacture or sell Bearings in the United States to Original Equipment Manufacturers ("OEMs") for installation into automobiles as part of the manufacturing process. (Id. at ¶ 42). Defendants JTEKT Corporation and NSK Ltd. pleaded guilty to antitrust violations and paid fines. (Id. at ¶¶ 68, 71). In its complaint, Plaintiff describes the process by which OEMS purchased Bearings directly, identify the OEMS that conducted business with Defendants, describe the characteristics of the Bearings market that are conducive to a price-fixing conspiracy

(Doc. No. 1 at ¶¶ 42-51, 52-60), detail government investigations into the Bearings market (Doc. No. 1, ¶¶ 60-102), as well as opportunities for Defendants to conspire with one another (Doc. No. 1 at ¶¶ 103-106).

Based on these allegations, Florida advances antitrust claims under federal and state law as well as a state law consumer protection claim. In their Motion to Dismiss, Defendants challenge the sufficiency of the complaint based upon due process considerations and statute of limitations grounds.

## III.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows district courts to dismiss a complaint when it fails "to state a claim upon which relief can be granted." When reviewing a motion to dismiss, the Court "must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although the federal procedural rules do not require that the facts alleged in the complaint be detailed, "'a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.'" Twombly, 550 U.S. at 555; Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Under Iqbal, a civil complaint will only survive a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. . . . Exactly how implausible is 'implausible' remains to be seen, as such a malleable standard will have to be worked out in

practice." Courie v. Alcoa Wheel & Forged Prods., 577 F.3d 625, 629-630 (6th Cir. 2009).

## IV.  ANALYSIS

### A.  Due Process

The parties disagree as to whether due process considerations require dismissal of Plaintiff's state law claims.  Defendants argue that the lack of contacts between the alleged conspiratorial conduct and the State of Florida undermine the application of Florida law to indirect purchases by Florida consumers and businesses.  Defendants are correct that for the law of a state to apply to a particular claim, the state " 'must have a significant contact or significant aggregation of contacts' to the claims asserted by each member of the plaintiff class, contacts 'creating states interests,' in order to ensure that the choice of [a state's] law is not arbitrary or unfair." Phillips Petroleum Co. v. Shutts. 472 U.S. 797, 818-19 (1985) (quoting Allstate Ins. Co. v. Hague, 449 U.S. 302, 312-13 (1981) (plurality opinion)).

Nevertheless, as the Court noted in rejecting this basis for dismissal of the End-Payors' complaint, the facts giving rise to the discussion in Shutts set it apart from the facts at hand.  (See 12-503, Doc. No. 106).  The Court noted the factual distinctions:

> In Shutts, the Supreme Court considered whether the application of Kansas law to a nationwide class action suit brought by gas company investors seeking to recover interest on royalties complied with due process.  In deciding that it did not, the Supreme Court noted that the defendant did not reside in Kansas, 99% of the gas leases involved in the suit lacked a connection to Kansas, as did 97% of the plaintiffs.  In contrast, End-Payor Plaintiff's claims are connected to the various state laws under which they proceed because they reside in those states, and they allege that they purchased Bearings for personal use and paid artificially inflated prices for Bearings during the Class Period.

(Id. at *18-19). The Court concluded that the End-Payor Plaintiffs adequately alleged that they purchased Bearings for personal use and that they paid artificially inflated prices for Bearings during the Class period, and Shutts did not preclude the claims. (See 12-503, Doc. No. 70 at ¶¶ 9, 21-68).

The Court reaches the same conclusion relative to this action and rejects Defendants' reformulated argument that Florida's claims are precluded by AT & T Mobility LLC v. AU Optronics Corp., 707 F.3d 1106, 1111 (9th Cir. 2013) (considering the limitations imposed by due process considerations as to the application of a given state's law). The question before the Ninth Circuit was "whether a district court was correct to consider the 'relevant occurrence or transaction,' in an antitrust case as limited to the place of purchase of the price-fixed goods." AT & T, 707 F.3d at 1109.

The lower court in AT & T held that because the goods were purchased outside of California, due process barred the application of California law, despite the fact that some of the conspiratorial conduct had taken place in California. In contrast, the appellate court noted that due process standards were permissive under the Allstate decision, and instructed the lower court to consider anticompetitive conduct by the defendant within a state that is neither "slight" nor "casual" such that the application of California law was "neither arbitrary nor fundamentally unfair." 707 F.3d at 1113 (quoting Allstate Ins. Co., 449 U.S. at 312-13).

This Court finds that the permissive standard extends to the application of Florida law to the claims here. The anticompetitive conduct attributed to Defendants in Florida is related to Plaintiff's alleged injuries. Moreover, the conduct is neither "slight" nor "casual." AT&T at 1113. The allegations fall within the standard in that they establish

5

a "significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." Id.

Specifically, even though the object of the conspiracy here was parts incorporated into vehicles, the purchase of many, many vehicles in Florida provides a significant contact with the occurrence or transaction giving rise to the litigation. The basis of the application of Florida law is not merely residency in Florida, and the business conducted in Florida plays more than a de minimis role in the conspiratorial activity. Plaintiff alleges that "Defendants' and their co-conspirators' unlawful activities took place within the flow of and substantially affected interstate trade and commerce, as well as trade and commerce within the State of Florida." (Doc. No. 1 at ¶ 108).

> Defendants' and their co-conspirators' conduct had a direct, substantial, and reasonably foreseeable effect on domestic interstate commerce within the United States, including Florida. As a direct and proximate result of the acts as alleged herein, the general economy of the United States, including Florida, sustained injury. Defendants knew and expected that Bearings would be installed in automobiles that would be sold in the United States and in the State of Florida. Additionally, NSK, NTN, JTEKT, and SKF sold directly to Florida.

(Id.)

These allegations are sufficient to withstand Defendants' request for dismissal on due process grounds.

**B. Availability of Relief under Count III**

The parties also disagree as to whether Plaintiff states a timely cause of action under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, et seq. The statute of limitations governing FDUTPA claims is four years. Fla. Stat. § 95.11(3)(f) (2006). Moreover, Florida's tolling statute, Fla. Stat. Ann. §

95.051(1), "specifically precludes application of any tolling provision not specifically provided therein," Hearndon v. Graham, 767 So.2d 1179, 1185 (Fla. 2000) (holding delayed discovery may delay the time of accrual but does not toll the applicable statute of limitations), and fraudulent concealment is not listed among the bases for tolling a statute of limitations.  Accordingly, Defendants conclude that Plaintiff cannot bring its FDUTPA claims.

Despite the absence of fraudulent concealment from the enumerated tolling provisions, it has been employed as an equitable basis for tolling a statute of limitations by Florida courts.  See In re Bldg. Materials Corp. of Am. Asphalt Roofing Shingle Products Liab. Litig., No. 8:11-CV-02785-JMC, 2013 WL 139520, at *10 (D.S.C. Jan. 10, 2013) (citing S.A.P. v. State, Dept. of Health and Rehabilitative Services, 704 So.2d 583, 585 (Fla. 1st Dist. Ct. App. 1997); Berisford v. Jack Eckerd Corp., 667 So.2d 8409 (Fla. 4th Dist.Ct.App.1995) (finding that fraudulent concealment could toll the statute of limitations in a wrongful death action despite the lack of a statutory exception); Vargas By and Through Vargas v. Glades General Hosp., 566 So.2d 282 (Fla. 4th Dist. Ct. App. 1990) (observing that fraudulent concealment acts as an exception to the statute of limitations because "courts will not protect defendants who are directly responsible for the delays of filing because of their own willful acts") (quotation omitted)).  In In re TFT-LCD (Flat Panel) Antitrust Litigation, No. M 07-1827 SI, 2011 WL 4387812 at *4 (N.D. Cal. Sept. 20, 2011), for example, the court analyzed the doctrines of fraudulent concealment and equitable estoppel in the context of an antitrust claim advanced under the FDUTPA.  The court was "convinced that the Florida Supreme Court would recognize the doctrine of fraudulent concealment." Id.

Even if Defendants are correct in their position that the exception exists only for common law claims, not statutory claims such as one brought under the FDUTPA, Plaintiff asserts it may proceed because under Florida case law fraudulent concealment is deemed to be a "species of equitable estoppel," which is not barred by the statute of limitations.  Specifically, in Florida Dept. of Heath and Rehabilitative Serv. v. S.A.P., 835 So. 2d 1091, 1093 (Fla. 2002), the state supreme court addressed the question certified, "Can the doctrine of fraudulent concealment apply to toll the statute of limitations in a negligence action?".  The state court reiterated that "courts will not protect defendants who are directly responsible for delay of filing because of their own willful acts."  Id. at 1094.  The court further observed that the doctrine of equitable estoppel can only be precluded by a statute that expressly states that it is altering the common law.  Id. at 1098.  Accord TFT-LCD (Flat Panel) Antitrust Litig., 2011 WL 43812 at *1-4 (denying the defendants' motion for partial summary judgment on statute of limitations grounds, rejecting their position that the doctrine of equitable estoppel does not encompass fraudulent concealment); In re Optical Disk Drive Antitrust Litig., No. 3:10-MD-02143-RS, 2014 WL 1379197, at *2 (N.D. Cal. Apr. 8, 2014) (same).

Defendant further contests that the circumstances of this case place it within the scope of the doctrine of equitable estoppel.  Specifically, Defendants assert Plaintiff's failure to allege that any Defendant fraudulently induced Plaintiff to delay bringing suit despite knowledge of the claims renders the doctrine inapplicable.  Therefore, the claims for damages under the FDUTPA prior to May 27, 2010, must be dismissed.  The Court disagrees.

Contrary to Defendants' position, the dissent in SAP raised the position

advanced by Defendants here–that equitable estoppel requires that the plaintiff be induced to delay bringing suit despite knowledge of the claim. See SAP, 835 So.2d at 1109 (Wells, J. dissenting). Nor have other Florida courts limited equitable estoppel in the manner suggested by Defendants. For example, in Major League Baseball v. Morsani, 790 So. 2d 1071, 1077 (Fla. 2001), the Florida Supreme Court distinguished tolling, which "operates on the statute of limitations" and equitable estoppel, which "operates on the party." The doctrine of equitable estoppel is driven by "principles of fair play and essential justice and arises when one party lulls another party into a disadvantageous legal position." Id. at 1076.

> Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which perhaps have otherwise existed, either of property or of contract, or of remedy, as against another person, who has in good faith relied upon such conduct and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, or of contract or of remedy.

Id. (citation omitted). Consequently, courts apply the doctrine "in all cases where one, by word, act or conduct, willfully caused another to believe in the existence of a certain state of things, and thereby induces him to act on this belief injuriously to himself, or to alter his own previous condition to his injury." Id.

According to Plaintiff, Defendants committed fraudulent acts and concealed them, including the existence of the conspiracy, by using code names and meeting in secret locations to avoid detection while publicly representing that their acts resulted from a competitive process. (see Compl. at ¶¶ 118, 123, 124). Plaintiff also alleges, "To the extent that Defendants claim that the State of Florida's filing is late, Defendants bear

9

responsibility for the late filing," (Doc. No. 1 at ¶ 117), because "Defendants and their co-conspirators committed fraudulent acts and actively concealed those acts, including concealing the existence of the conspiracy alleged in this Complaint and representing to the public that prices were the result of the competitive process. (Doc. No. 1 at ¶¶ 118, 124). Plaintiff alleges that it could not have discovered its claims or facts sufficient to place it on notice of the claims until the Japan Fair Trade Commission's June 2012 cease and desist order. (Id. at ¶ 121). Prior to that time there was no information to suggest any of Defendants was involved in a criminal conspiracy to price-fix Bearings.

Plaintiff's complaint includes facts sufficient to state a claim given Florida court's interpretation of equitable estoppel. Because Plaintiff has alleged that Defendants have taken steps to conceal their wrongful actions, the Court finds no basis for dismissing Count III.

## V. CONCLUSION

For the reasons discussed above, the Court **DENIES** Defendants' motion.

**IT IS SO ORDERED.**

Date:  April 22, 2015                                     s/Marianne O. Battani
                                                                                         MARIANNE O. BATTANI
                                                                                         United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on April 22, 2015.

                                                                           s/ Kay Doaks  
                                                                           Case Manager